## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| ALABAMA TEACHERS CREDIT UNION, | ] ] ] | |
| Plaintiff, | ] ] | |
| v. | ] ] | CASE NO.: 4:16-cv-2027-KOB |
| DESIGN BUILD CONCEPTS, INC, et al., | ] ] ] | |
| Defendants. | ] ] | |

### MEMORANDUM OPINION

Before the court is Cross-claim Defendant Design Build Concepts, Inc.'s Motion to

Dismiss. (Doc. 57). DBC, a dissolved Georgia corporation, seeks to have all Plaintiff Alabama

Teachers Credit Union's claims and Defendant Design Build Concepts/IBT, LLC's cross-claims

against DBC dismissed pursuant to Fed. R. Civ. P. 12(b)(6). DBC argues the claims and cross-

claims are untimely under Georgia law because the claimants filed them after the applicable

statute of limitations had run. The court agrees with DBC and will GRANT the motion.

## I.      BACKGROUND

This case involves claims arising from the construction of an office building in Gadsden,

Alabama. Around April 17, 2003, Plaintiff ATCU and Defendant DBC (a Georgia corporation)

entered into an agreement for DBC to design and construct an office for ATCU in Gadsden,

Alabama. (Docs. 40 at 3; 43 at 20). The project was substantially completed on approximately

March 6, 2006. (Doc. 40 at 3). Sometime after moving into the building, ATCU discovered

moisture intrusion, roof leaks, and other problems with the building. (Doc. 40 at 4).

On July 31, 2007, IBT purchased certain DBC assets and assumed certain liabilities. (Docs. 40 at 3; 43 at 21). On or about August 3, 2007, IBT representatives Jim Givan and Mylle Mangum represented to ATCU that IBT would continue providing all services and support in connection with the project. (Doc. 40 at 4). ATCU requested that DBC and/or IBT evaluate the leaks and make the proper repairs. (Doc. 40 at 4). Despite assuring ATCU that it would address the defects, neither DBC nor IBT ever made those repairs. (Doc. 40 at 4). ATCU deferred hiring another party to complete the repairs because the Defendants represented that they would repair the leaks. (Doc. 40 at 11). DBC dissolved as a Georgia corporation in February 2010. (Doc. 40 at 4).[1]

ATCU alleges DBC and IBT are liable to it for breach of contract; negligence; fraudulent misrepresentation; breach of warranty; negligent hiring, training, and supervision; professional negligence; and negligent performance of warranty obligation. IBT filed cross-claims against DBC for indemnity and contribution based on an indemnity provision within those two companies' asset purchase agreement. DBC then filed a motion to dismiss all claims, arguing immunity from suit under the relevant statute of limitations because ATCU and IBT filed their claims and cross-claims more than five years after DBC dissolved.

---

[1] In its Complaint, ATCU stated that DBC dissolved in February 2010. (Doc. 40 at 4). In its Answer and Cross-claim filing, IBT stated that DBC "appears" to have dissolved. (Doc. 43 at 2). But then ATCU and IBT both argued in their respective Responses to the Motion to Dismiss that DBC had not proved its dissolution. (Docs. 65 and 66). Evidence before the court confirms that DBC dissolved in February 2010. *See infra* Part III.A.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

**III.    DISCUSSION**

DBC argues that Georgia Code Section 14-2-1407 bars ATCU's and IBT's claims

against it because the parties filed their claims more than five years after DBC dissolved. DBC,

incorporated in Georgia, correctly asserts that Georgia law governs whether DBC may be sued

after dissolution. A federal court sitting in diversity determines and applies the choice of law rule

that the forum state applies to a particular issue. *See Grupo Televisa, S.A. v. Telemundo

Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). And Alabama courts apply "the law

of the state of incorporation" to determine "whether a remedy exist[s] against a corporation that

ha[s] been dissolved." *Am. Nonwovens, Inc. v. Non Wovens Eng'g, S.R.L.*, 648 So. 2d 565, 568

(Ala. 1994). DBC also correctly states that Georgia law requires claims against a dissolved

Georgia corporation to be brought within five years after dissolving and publishing notice of its

intent to do so. Ga. Code. Ann. § 14-2-1407(d). As explained below, the court agrees that DBC

properly dissolved in February 2010 and thus finds the claims filed in 2016 against IBT are

untimely under the Georgia statute.

A. *Whether DBC dissolved in February 2010*

DBC points to evidence in the record to establish that it properly dissolved in February

2010. To dissolve a Georgia corporation, the Georgia Code requires a party to file a notice of

intent to dissolve with the Secretary of State , along with an "undertaking" certifying that the

party has requested publication of a notice of intent to voluntarily dissolve in a newspaper of

general circulation. *See* Ga. Code. Ann. §§ 14-2-1403, 1403.1. IBT attached DBC's Certificate

of Notice of Intent to Dissolve to its cross-claims against DBC (doc. 43-11 at 5), as well as a

copy of DBC's Certificate of Dissolution, issued by the Georgia Secretary of State (doc. 43-11 at

6). DBC attached to its reply brief in support of its motion to dismiss a copy of the newspaper publication of its intent to voluntarily dissolve that satisfies the requirements of Section 14-2-1407(b). (Doc. 70-1 at 2–3).

Though these documents are in the record, IBT argues the court may not consider them without converting DBC's motion to dismiss into one for summary judgment. The court disagrees. While the court generally may not consider matters outside the pleadings on a motion to dismiss, the court may consider documents central to plaintiff's claim, documents incorporated into the complaint by reference, as well as matters of which the court may take judicial notice. *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (2015); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Wright & Miller, *Federal Practice and Procedure* § 1357 (3d ed.). District courts may take judicial notice of matters that are accessible to the general public and "are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). *See also U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (courts may take judicial notice of statements contained within–but not the veracity of–newspaper articles).

DBC's Notice of Intent to Dissolve and Certificate of Dissolution are available to the general public and easily accessed on the Georgia Secretary of State's website. Given their accessibility and the reliability of their source, they are not subject to reasonable dispute and the court may take judicial notice of them. The court may also take judicial notice of DBC's notice of intent to voluntarily dissolve as it was published in "The Daily Report" on February 19 and 26, 2010. (Doc. 70-1 at 2–3). *See Osheroff*, 776 F.3d at 811 n.4. Thus, each of the documents in the

record purporting to prove DBC's dissolution are matters of which the court may take judicial notice, and the court may consider them without converting the motion into one for summary judgment.

The documents described above establish that DBC complied with Georgia's voluntary dissolution statute by (1) filing a notice of intent to voluntarily dissolve the corporation with the Secretary of State, and (2) publishing its notice of intent to voluntarily dissolve the corporation in a newspaper of general circulation. Ga. Code Ann. §§ 14-2-1403 and 1403.1. Because DBC and IBT have produced sufficient documentation to show that DBC complied with these requirements, the court finds for purposes of its analysis in this motion that DBC was effectively dissolved on February 9, 2010. Consequently, the court finds that the five-year statute of limitations on claims against DBC began to run on February 19, 2010–the date DBC published its notice in "The Daily Report." *See* Ga. Code Ann. § 14-2-1407(d).

**B.** *ATCU's claims against DBC*

ATCU filed its claims against DBC in November 2016 (doc. 1-1), over five years after DBC dissolved and published its notice of intent to dissolve in "The Daily Report." But ATCU argues that the statute of limitations in § 14-2-1407(d) does not bar its claims against DBC for two reasons. First, ATCU claims DBC has failed to show that it actually dissolved, thus making the statute of limitations in § 14-2-1407(d) inapplicable. But this argument is futile in light of the court's finding that DBC *did* dissolve in February 2010.

Second, ATCU claims the statute of limitations does not bar its claims against DBC because the claims arise out of misrepresentations that DBC's representatives made on behalf of the corporation *after* the corporation dissolved. *See* (Docs. 66 at 3; 40 at 9-10). ATCU contends

that this type of claim is not subject to the five year statute of limitations in § 14-2-1407(d). Yet ATCU provides no legal authority for that proposition.

ATCU alleges that DBC continued inspecting the roof leaks, attempting repairs, and making assurances that it would make the necessary repairs to its building after the date of dissolution. (Doc. 66 at 10). ATCU claims that under such circumstances, § 14-2-1407 is inapplicable to provide immunity from suit because Georgia corporations may be held liable under common law when their representatives continue acting on the corporation's behalf after dissolution. In so arguing, ATCU relies on *Hall v. Kimsey*, which held that when a "corporation continues, after the expiration of its charter, to conduct, within its corporate powers, the business for which it was incorporated, and deals with others as a corporation, it is a de facto corporation, and is liable upon contracts which it has made within its corporate powers." 173 S.E. 437, 437 (Ga. Ct. App. 1934).

However, while *Kimsey* shows DBC could be held liable for its representatives' actions after dissolution, nothing in the case or in the Georgia Code suggests that the holding provides an exception to the five-year statute of limitations in § 14-2-1407(d). Thus, even if Georgia common law affords ATCU a theory by which to sue DBC for post-dissolution misrepresentations, the five-year statute of limitations still applies to bar such claims when they are untimely.

The Georgia statute plainly states that if a corporation in the dissolution process publishes a newspaper notice containing the statutorily required information, "a claim . . . based on an event occurring after the filing of the notice of intent to dissolve is barred against the corporation, its shareholders, officers, and directors" unless the claimant files the claims within "five years after the date of publication." Ga. Code Ann. § 14-2-1407(d). Therefore, even claims arising

7

against the corporation, its shareholders, its officers, or its directors *after* dissolution must be brought *before* the five-year window closes. ATCU provides nothing to show that § 14-2-1407 is somehow inapplicable to the type of claim at issue in *Kimsey* or its claims against DBC.

DBC dissolved in February 2016, and published its notice of intent to voluntarily dissolve in "The Daily Report" on February 19 and 26, 2010. ATCU did not file its claims against DBC until November 2016. The court, therefore, finds that § 14-2-1407(d) bars ATCU's 2016 claims against DBC because they were filed more than five years after DBC published notice of its dissolution. For this reason, ATCU's claims against DBC are due to be dismissed.

**C.** *IBT's cross-claims against DBC*

IBT also submits two reasons for denying DBC's motion to dismiss. First, IBT argues that even if the court finds that DBC is a dissolved corporation, IBT may still seek indemnity and contribution from DBC and its shareholders based on the indemnification provision within IBT's and DBC's asset purchase agreement. *See* (Doc. 25-1 at 24)*.* Second, IBT argues that DBC is an indispensable party under Fed. R. Civ. P. 19(a)(1). The court will address both arguments in turn.

1. *Whether the indemnification provision creates an exception to the statute of limitations*

IBT claims the indemnification provision within its asset purchase agreement with DBC (dated July 31, 2007) creates a cause of action against DBC that is not subject to the statute of limitations in Georgia Code § 14-2-1407(d). IBT's reliance on the asset purchase agreement makes the agreement central to IBT's cross-claims against DBC, and neither IBT nor DBC challenge the document's authenticity.[2] So, the court may consider the agreement without

---

[2] DBC also cites the asset purchase agreement in its motion to dismiss. (Doc. 58 at 3 n.1).

converting this motion into one for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Section 8.2(a)(iv) of the asset purchase agreement permits IBT to seek indemnity for damages it incurs because of "post-closing" warranty or repair activity related to "pre-closing" work that DBC performed. (Doc. 25-1 at 24–25). The agreement also allows IBT to seek indemnity from DBC's shareholders on a joint and several basis. (Doc. 25-1 at 24). However, IBT has not produced any authority to show that its claims arising out of the asset purchase agreement's indemnity provision fall within any exception to the statute of limitations in § 14-2-1407(d). Again, the statute clearly provides that where a dissolved company has published a newspaper notice in compliance with § 14-2-1407(b), "all claims" against "the corporation, its shareholders, officers, and directors" must be brought within five years after the date of publication. Ga. Code Ann. § 14-2-1407(c)–(d). The statute makes no exception for claims arising out of contractual agreements, such as the indemnity provision within IBT's and DBC's asset purchase agreement, and IBT produces no authority indicating that such an exception exists.

Rather than providing case law or statutory authority to show that § 14-2-1407 does not apply to contractual indemnity provisions, IBT argues that the statute is inapplicable to its cross-claims because DBC's shareholders personally guaranteed indemnity and contribution. Yet finding such an exception would require the court to go beyond a plain reading of § 14-2-1407 and to adopt an interpretation inconsistent with its language–all without any precedent on which to base such a diversion. The court declines to assign any meaning to the Georgia statute other than that which it plainly conveys: *all* claims against a dissolved "corporation, *its shareholders,*

*officers, and directors"* are barred unless the claims are filed within five years after the date of the newspaper publication.

Because IBT filed its cross-claims against DBC more than five years after DBC's publication of its notice of intent to dissolve, § 14-2-1407(d) bars them as untimely. IBT has not shown any valid reason for the court to find that an exception applies to IBT's claims simply because they arise out of an indemnification agreement the parties entered into before DBC dissolved. Therefore, the court finds that IBT's cross-claims against DBC for indemnity and contribution are due to be dismissed.

2. *Whether DBC is an indispensable party*

Finally, IBT argues the court should not dismiss DBC from this action because it is an indispensable party under Fed. R. Civ. P. 19(a)(1). In support of this argument, IBT states that DBC's absence would prejudice both ATCU's and IBT's ability to pursue their legal claims and defenses. The court agrees that dismissing DBC from this action would prejudice IBT's ability to pursue its legal claims against DBC *if* the statute of limitations had not already run. But, as explained above, IBT's window of opportunity to file claims against DBC closed in 2015. Rule 19(a)(1) is powerless to open it again. In short, a defendant against whom all claims are barred is not an indispensable party.

**IV. CONCLUSION**

The court has determined that Defendant DBC dissolved in February 2010, and posted the required newspaper publication to achieve immunity from suit for all claims asserted more than five years after that publication. Because ATCU and IBT filed their claims and cross-claims against DBC more than five years after the statute of limitations had run, the court finds that

Design Build Concepts, Inc.'s motion to dismiss is due to be GRANTED. The court will enter a separate order to that effect.

      **DONE** this 18th day of October, 2017.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE